IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>PLAINTIFF,<br><br>vs.<br><br>ELOY ALONSO, MARY LEIGH ARNOLD, as Receiver for ELOY ALONSO; COMPLETE BUILDING CORPORATION, INC.; TRI-COUNTY ROOFING, INC.; PALMETTO POINTE AT PEAS ISLAND CONDOMINIUM PROPERTY OWNERS ASSOCIATION, INC. AND JACK LOVE, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br><br>DEFENDANTS. | Civil Action No.: 2:19-cv-518-BHH<br><br>COMPLAINT<br><br>(Declaratory Judgment)<br><br>(Non-Jury) |

Plaintiff Nautilus Insurance Company ("Nautilus"), by and through its undersigned counsel, complaining of the above-named defendants, Eloy Alonso ("Alonso"), Mary Leigh Arnold, as Receiver for Eloy Alonso ("the Receiver"), Complete Building Corporation, Inc. ("CBC"), and Tri-County Roofing, Inc. ("Tri-County"), and also Palmetto Pointe at Peas Island Condominium Property Owners Association, Inc. ("the Association") and Jack Love, individually, and on behalf of all others similarly situated ("Love," collectively "Underlying Plaintiffs"), respectfully alleges and would show as follows:

**NATURE OF ACTION**

1.      This action is brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, there is a real and justiciable controversy between the parties, the parties are interested parties, and Nautilus asks the Court to declare the rights and obligations of the parties.

2. The Court's declaration will confer certainty on the parties and serve the interests of justice.

## PARTIES

3. Nautilus is an insurance company organized and existing under the laws of the state of Arizona, with its principal place of business in Scottsdale, Arizona. Nautilus issues insurance policies in South Carolina and insures property and interests located within South Carolina.

4. Upon information and belief, Alonso is an individual who previously lived in Charleston, South Carolina and operated his business in Charleston, South Carolina. By Order Appointing Receiver filed September 25, 2018, "Eloy Alonzo Vasquez" was placed into receivership and the Order was served on Alonso at his last known address.

5. Upon information and belief, CBC is an administratively dissolved corporation that was organized under the laws of the state of South Carolina with its principal place of business in Charleston, South Carolina.

6. Upon information and belief, Tri-County is a corporation organized and existing under the laws of the state of South Carolina with its principal place of business in Ladson, South Carolina.

7. Upon information and belief, the Association is a non-profit corporation organized and existing under the laws of the state of South Carolina.

8. Upon information and belief, Love is an individual and is a citizen of the state of South Carolina and resides in Charleston, South Carolina.

9. Jurisdiction exists because there is complete diversity of citizenship between Nautilus and the Defendants, and the amount in controversy, including the potential costs of

2

defending and indemnifying Alonso in the underlying dispute, potentially exceeds $75,000.00. This Court thus has jurisdiction based upon 28 U.S.C. § 1332(a).

10. Venue is appropriate under 28 U.S.C. § 1391 because this lawsuit seeks a declaration from the Court interpreting the terms of insurance policies issued to Alonso as an insured with regard to his business located in Charleston County, South Carolina and work performed in Charleston County, South Carolina.

## FACTUAL BACKGROUND

**A.     Underlying Lawsuit**

11. This declaratory judgment action arises out of claims regarding alleged construction defects specifically related to and arising out of the performance of certain construction work by Alonso.

12. On February 13, 2015, Underlying Plaintiffs filed a Complaint in the Court of Common Pleas for Charleston County, South Carolina, Case No. 2015-CP-10-0955. Since that time on November 2, 2017, Underlying Plaintiffs filed their Second Amended Complaint, captioned *Palmetto Pointe at Peas Island Condominium Property Owners Association, Inc. and Jack Love, Individually, and on Behalf of All Others Similarly Situated v. Island Pointe, LLC, et al.* ("Palmetto Pointe Lawsuit"). A true and correct copy of the Second Amended Complaint is attached as **Exhibit A**, the allegations of which are incorporated here by reference.

13. Alonso was brought into the Palmetto Pointe Lawsuit as a party by the Third-Party Complaint filed by Tri-County on April 22, 2015. Since that time, Plaintiffs have named Alonso as a direct defendant and Tri-County filed a crossclaim against Alonso for negligence, breach of express and implied warranties, breach of contract, and indemnity.

3

14. CBC has also filed a crossclaim against Alonso for negligence, breach of warranty, and indemnity.

15. According to the Second Amended Complaint, the Palmetto Pointe Lawsuit involves claims arising out of the alleged defective construction of a condominium project originally consisting of forty (40) townhouse style condominiums located in twenty (20) buildings and related common elements and a clubhouse ("Palmetto Pointe" or "the Project") in Charleston, South Carolina.

16. According to the Second Amended Complaint, CBC was engaged in the business of designing and constructing the condominiums at Palmetto Pointe.

17. Per the Second Amended Complaint, Tri-County supplied materials and roofing and related materials, among other work, and supplied siding, flashing, deck waterproofing, gutters, and other materials at Palmetto Pointe.

18. According to the Second Amended Complaint, Alonso installed roofing, flashing, other roofing components, and waterproofing, among other work at Palmetto Pointe.

19. In the Second Amended Complaint, Underlying Plaintiffs contend that at the time the Certificates of Occupancy were issued, Palmetto Pointe contained latent building defects and preliminary reports show defects in the construction of the Project and damages such that Alonso, and the other named defendants, are liable to the Underlying Plaintiffs under causes of action for negligence/gross negligence and breach of warranty.

20. Underlying Plaintiffs allege they are entitled to recover damages, including actual, consequential, and punitive damages.

21. Alonso was initially served with Tri-County's Third-Party Complaint by publication, and counsel retained by Nautilus on behalf of Alonso accepted service. Nautilus is currently defending Alonso under a full reservation of rights.

**B.     The Policies**

22. In 2007, Nautilus first issued a commercial general liability policy, policy number NC669057, to Alonso for the policy period beginning May 17, 2007 to May 17, 2008. Nautilus then issued policy numbers NC782542; NC922525; NN025445; NN133046 to Alonso for the June 23, 2008 to June 23, 2009; June 23, 2009 to June 23, 2010; June 23, 2010 to June 23, 2011; and June 23, 2011 to June 23, 2012 policy periods, respectively. True and correct copies of the policies are attached as **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, and **Exhibit F**, the terms and conditions of which are incorporated herein by reference.

23. The policies issued by Nautilus are commercial general liability policies of insurance. The policies, pursuant to their respective Declarations, provide for the following limits of liability:  $1,000,000 per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate and have a $2,500 deductible per claim for bodily injury and property damage liability combined.

24. A justiciable controversy exists between the parties in this action concerning whether coverage exists under the policies for the damages as alleged in the Palmetto Pointe Lawsuit.

25. Nautilus is entitled to a judicial declaration that the policies issued to Alonso do not provide coverage for the allegations raised in the Palmetto Pointe Lawsuit, and therefore, Nautilus has no duty to defend or indemnify in connection with the Palmetto Pointe Lawsuit.

5

26. Additionally, Nautilus is entitled to a judicial declaration that it is entitled to recover the costs of the defense borne by Nautilus through the date upon which Nautilus obtains a judicial declaration that it owed no duty of defense regarding the claims made in the Palmetto Pointe Lawsuit.

**FOR A FIRST DECLARATION**
**(Lack of "Property Damage" or "Occurrence")**

27. The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

28. The policies, pursuant to their insuring agreement, provide coverage, subject to any applicable exclusion(s), for "'property damage' … caused by an 'occurrence' … during the policy period."

29. The policies, as set forth more specifically therein, define "property damage" in relevant part to mean "physical injury to tangible property, including all resulting loss of use of that property…or loss of use of tangible property that is not physically injured."

30. The policies, as set forth more specifically therein, also define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

31. Under the terms and conditions of the policies, Nautilus contends and would show that some or all of the allegations raised in the Palmetto Pointe Lawsuit do not constitute "property damage" or an "occurrence" as defined by the policies.

32. Accordingly, Nautilus seeks a declaration from this Court that it has no defense or indemnification obligations under the policies in connection with the claims alleged in the Palmetto Pointe Lawsuit because the claims do not constitute "property damage" or an "occurrence" as defined by the policies.

6

33.     Further, Nautilus seeks a declaration from this Court that it has no defense or indemnification obligations under the policies in connection with the claims alleged in the Palmetto Pointe Lawsuit because the claimed property damage did not occur during the policy period.

## FOR A SECOND DECLARATION
### ("Exclusion - Your Work Completed Prior to Specified Date" Endorsement)

34.     The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

35.     The policies contain an endorsement entitled "Exclusion – Your Work Completed Prior to Specified Date." The endorsement contained in the policy issued for the 2010 to 2011 policy period provides as follows:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **SCHEDULE**
>
> **Date:** 06/23/2008
>
> **A.**     The following exclusion is **added** to **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**
>
>    This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" that was completed by or on behalf of any insured prior to the date shown in the Schedule.
>
> **B.**     We will have no duty to defend any insured against any loss, claim, "suit" or other proceeding seeking damages for "bodily injury" or "property damage" arising out of "your work" that was completed by or on behalf of any insured prior to the date shown in the Schedule.
>
> All other terms and conditions of this policy remain unchanged.

7

The endorsement contained in the policies issued for the 2011 to 2012 policy period include substantially similar language and the date included in the schedule is 06/23/2011.

36.     Per the endorsement, the policies do not afford coverage for damages included in the "products-completed operations hazard" that arises out of Alonso's work that was completed prior to the date shown in the Schedule such that Nautilus will have no duty to defend any insured against the claims raised in the Palmetto Pointe Lawsuit arising out Alonso's work.

37.     Upon information and belief, Palmetto Pointe was constructed between 2006 and 2007.

38.     Accordingly, Nautilus seeks a declaration from this Court that the policies issued for the 2010 through 2012 policy periods do not afford coverage for any damages arising out of Alonso's work that was completed by Alonso prior to the dates shown in the Schedule of the "Exclusion – Your Work Completed Prior to Specified Date" endorsement.

**FOR A THIRD DECLARATION**
**("Exclusion – Punitive or Exemplary Damages" Endorsement)**

39.     The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

40.     The policies include an endorsement entitled "Exclusion - Punitive or Exemplary Damages."  The endorsement, provided under Form S017 (01/98), included on the policy issued for the 2007 to 2008 policy period provides:

> This endorsement modifies insurance provided under the following:
>
> BUSINESSOWNERS LIABILITY COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY
> COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY
> COVERAGE PART

8

> The following is **added** to EXCLUSIONS:
>
>> This insurance does not apply to a claim of or indemnification or punitive or exemplary damages. If a "suit" shall have been brought against you for a claim within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then we will afford a defense for such action. We shall not have an obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.
>
> All other Terms and Conditions of this Policy remain unchanged.

The endorsement, provided under Form L217 (06/07), included on the policies issued for the 2008 through 2012 policy periods provides:

> This endorsement modifies insurance provided under the following:
>
>> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>> LIQUOR LIABILITY COVERAGE PART
>> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
>> PRODUCTS/COMPLETED OPERATIONS COVERAGE PART
>
> The following exclusion is **added** to **2. Exclusions** of **Section I:**
>
>> This insurance does not apply to punitive or exemplary damages.
>
> All other terms and conditions of this policy remain unchanged.

41. Per the Second Amended Complaint, Underlying Plaintiffs seek to recover punitive damages.

42. Accordingly, Nautilus seeks a declaration from this Court that the policies do not afford coverage for any allegations of entitlement to punitive damages, and likewise any award of punitive damages, in the Palmetto Pointe Lawsuit.

9

**FOR A FOURTH DECLARATION**
**("Exclusion – All Hazards in Connection with Ongoing Operations and Your Work"**
**Endorsement)**

43. The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

44. The policies issued for the 2010 through 2012 policy periods contain an endorsement entitled "Exclusion – All Hazards in Connection with Ongoing Operations and Your Work," form L292(06/07) and the endorsement contained in the policy issued for the 2010 to 2011 policy period provides:

> This endorsement modifies insurance provided under the following:
>
> > COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **SCHEDULE**
>
> **Description of Operation(s):**
>
> > Residential Roofing and Carpentry
>
> **Description of Your Work:**
>
> > Roofer and Shingle Installation
>
> **Specified Location(s) (If Applicable):**
>
> > —
> >
> > —
>
> > A.   The following exclusion is **added** to **2. Exclusions** of **Coverage A – Bodily Injury And Property Damage Liability, Coverage B – Personal And Advertising Injury Liability** and **Coverage C – Medical Payments**:
> >
> > > 1.   The ongoing operations described in the Schedule, regardless of whether such operations are conducted by or on behalf of any insured or whether the operations are conducted for any insured or others; or

10

    **2.** "Your work" and included in the "products-completed operations hazard" described in the Schedule.

    If a specific "location" is designated in the Schedule, this exclusion applies only to that "location".

  **B.** Paragraph **l. Damage to Your Work** of **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is **replaced** by the following:

    **l.** **Damage To Your Work**

     "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

  **C.** The following definition is **added** to the **Definitions** section:

    "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

 All other terms and conditions of this policy remain unchanged.

45. Per the Second Amended Complaint, Alonso is alleged to have performed work related to the installation of roofing, flashing, and other roofing components, among other work at Palmetto Pointe.

46. Accordingly, Nautilus seeks a declaration from this Court that the policies issued for the 2010 to 2012 policy periods do not afford coverage in connection with Roofer and Shingle Installation work.

**FOR A FIFTH DECLARATION**
**(Standard Policy Exclusions)**

47. The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

11

48.     Section I—Coverages, paragraph 2. Exclusions of Coverage A Bodily Injury and Property Damage Liability of both of the policies contains certain standard policy exclusions, namely: "c. Contractual Liability," "j. Damage to Property," "k. Damage To Your Product," and "l. Damage To Your Work."

49.     The policies provide, in relevant part, as follows:

> **2.**     Exclusions
>
> This insurance does not apply to:
>
> ****
>
> **b.**     Contractual Liability
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> **(1)**     That the insured would have in the absence of the contract or agreement; or
>
> **(2)**     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
>
> > **(a)**     Liability to such party for, or for the costs of, that party's defense has also been assumed in the same "insured contract"; and
> >
> > **(b)**     Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute

12

>>resolution proceeding in which damages to which this insurance applies are alleged.

>> ****

>**j.**  Damage To Property

>>"Property damage" to:

>> ****

>>**(5)**  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

>>**(6)**  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

>> ****

>>Paragraphs **(3)**, **(4)**, **(5)**, and **(6)** of this exclusion do not apply to liability assumed under a side-track agreement.

>>Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

>> ****

>**k.**  Damage To Your Product

>>"Property damage" to "your product" arising out of it or any part of it.

>**l.**  Damage To Your Work

>>"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

>>This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

13

****

50.     The above-referenced policy exclusions provide that coverage is not available under the policies to the extent that the damages at issue in the Palmetto Pointe Lawsuit fall within any of these exclusions.  Accordingly, the policies afford no coverage for the damages alleged in the Palmetto Pointe Lawsuit, and Nautilus does not owe a duty to defend or indemnify.

<u>**FOR A SIXTH DECLARATION**</u><br>**(Duty to Cooperate)**

51.     The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

52.     The policies provides, in pertinent part, as follows:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

****

**2.     Duties In The Event Of Occurrence, Offense, Claim Or Suit**

****

**c.**     You and any other involved insured must:

**(1)**     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)**     Authorize us to obtain records and other information;

**(3)**     Cooperate with us in the investigation or settlement of the claim or defense against the "suit" and

**(4)**     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

14

****

53. Nautilus received notice of the claim through counsel for Tri-County sending a copy of the Third-Party Complaint to counsel who previously represented Alonso in a prior matter and who was ultimately retained by Nautilus to represent Alonso in the Palmetto Pointe Lawsuit.

54. Alonso failed to provide notice of this claim to Nautilus in contravention of the terms of the policy.

55. Nautilus sent Alonso an initial Reservation of Rights and Partial Disclaimer letter dated September 25, 2015 by certified mail, return receipt, and Nautilus received confirmation that the Reservation of Rights letter was delivered on October 2, 2015. A true and correct copy of the delivery confirmation is attached as **Exhibit G**.

56. Nautilus sent Alonso the updated Reservation of Rights and Partial Disclaimer letter dated November 3, 2017 by certified mail, return receipt, and Nautilus received confirmation that the Reservation of Rights letter was delivered on November 9, 2017 and signed for by Alonso. A true and correct copy of the delivery confirmation is attached as **Exhibit H**.

57. Alonso has failed to cooperate in the handling of the claim by failing to provide any information regarding the claim.

58. Alonso's failure to comply with the conditions of coverage as required under the policies has materially and substantially prejudiced Nautilus' ability to conduct its investigation regarding the scope and nature of Alonso's work at the Project.

59. Accordingly, Nautilus seeks a declaration from this Court that coverage under the policies is excluded based on Alonso's failure to meet the conditions for coverage.

**WHEREFORE,** Nautilus prays that the Court enter an Order declaring the rights of the parties as follows:

a.  The policies issued by Nautilus to Alonso do not provide coverage for and/or exclude from coverage the claims asserted in connection with the Palmetto Pointe Lawsuit;

b.  Nautilus has no duty to defend or indemnify in connection with the claims asserted in the Palmetto Pointe Lawsuit; or in the alternative,

c.  The policies provide coverage for only some and/or exclude from coverage some of the claims asserted/damages alleged in the Palmetto Pointe Lawsuit;

d.  Nautilus is entitled to recover the costs of the defense borne by Nautilus through the date upon which Nautilus obtains a judicial declaration that it owed no duty of defense regarding the claims made in the Palmetto Pointe Lawsuit; and

e.  Further, Nautilus prays that the Court award the costs of the action and any such other and further relief as this Court shall deem just and proper.

GALLIVAN, WHITE & BOYD, P.A.

By: *s/ Janice Holmes*
Janice Holmes (11366)
Shelley S. Montague (07587)
1201 Main Street, Suite 1200
Post Office Box 7368
Columbia, South Carolina 29202
Telephone:  803-779-1833
Facsimile:   803-779-1767
jholmes@GWBlawfirm.com
smontague@GWBlawfirm.com

Attorneys for Nautilus Insurance Company

Columbia, South Carolina
February 21, 2019

16